c

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| DR. LANCE E. TEMPLETON, Plaintiff | CIVIL ACTION NO. 1:19-CV-01292 |
| VERSUS | JUDGE JOSEPH |
| CB MEDICAL, L.L.C., *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Before the Court are Rule 12(b)(6) Motions to Dismiss (ECF Nos. 8, 21) filed by Defendant CB Medical, L.L.C. ("CB Medical"). CB Medical seeks dismissal of Plaintiff Dr. Lance E. Templeton's ("Dr. Templeton's") claims under Louisiana mandate law, the single business enterprise doctrine, and civil conspiracy. ECF Nos. 8, 21. Dr. Templeton opposes. ECF Nos. 15, 25.

Dr. Templeton's Complaint (ECF No. 1), as amended (ECF No. 13), states plausible claims for relief against CB Medical. CB Medical's Rule 12(b)(6) Motions to Dismiss (ECF Nos. 8, 21) should therefore be DENIED.

## I. Background

Dr. Templeton's initial Complaint (ECF No. 1) asserts federal claims under exclusive jurisdiction pursuant to the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, *et seq.*, and under original jurisdiction pursuant to 28 U.S.C. § 1331. ECF No. 1 at 2. He also asserts supplemental state law claims. ECF No. 1 at 2. Dr. Templeton names as Defendants CB Medical and Dr. Kenneth L. Perego II ("Dr. Perego") (collectively, "Defendants"). ECF No. 1 at 1.

Dr. Templeton claims Dr. Perego contacted him on October 12, 2017 to seek a short-term working capital loan to cover Dr. Perego's "controlled entity," which he referred to as CB Medical. ECF No. 1 at 3. He staes that Dr. Perego's "controlled entity" was an existing company engaged in sanctioned medical marijuana programs (or the pursuit thereof). *Id.* On October 16, 2017, acting individually and on behalf of the "controlled entity," Dr. Perego drafted the Promissory Note (the "Note") (ECF No. 1-2), and delivered it to Dr. Templeton for consideration. *Id.* The Note identifies the "Issuer" and "Maker" as CB Medical Research, Inc. ("CB Medical Research"). *Id.* That day, Dr. Templeton agreed to the terms of the Note. *Id.* at 4.

Dr. Templeton, "Holder" of the Note, contends the Note provided that he would loan the principal sum of $100,000 to Dr. Perego's controlled entity in return for: (1) repayment of the principal amount by the maturity date of November 1, 2017; (2) payment of a $10,000 fee by the maturity date; (3) 12% interest per annum on unpaid amounts after the maturity date; and (4) an equity position (90,000 shares) in CB Medical Research. *Id.* Dr. Perego represented to him that the equity interest value could be approximately $100,000. *Id.* at 3.

The Note listed the common address for the Issuer and Guarantor – identified as CB Medical Research and Dr. Perego – as 1201 N. Bolton Ave., Alexandria, LA 71301. *Id.* Dr. Templeton alleges that, acting individually and on behalf of CB Medical, Dr. Perego instructed him to – and he did – wire the $100,000 loan to One World Pharma, L.L.C. in Florida. *Id.*

The Issuer defaulted on the loan due to non-payment by the November 1, 2017 maturity date. *Id.* at 5. Despite demand for payment and non-payment for over seven months, Dr. Perego explained that the company was struggling financially due to U.S. banks not wanting to engage in business transactions in the marijuana business. *Id.* On June 21, 2018, Dr. Perego paid $100,000 on the loan with a check post-dated June 26, 2018 from his personal funds. *Id.* Dr. Templeton has not received the $10,000 fee, remaining principal, or accrued interest due under the Note. *Id.*

Dr. Templeton claims there is not, and was not in October 2017, a duly organized entity in Louisiana by the name of CB Medical Research. *Id.* He contends there is, and was in October 2017, a validly existing entity by the name of CB Medical. *Id.*

CB Medical is a "manager managed limited liability company" registered in Louisiana on January 31, 2017 by Dr. Perego. *Id.* Dr. Templeton claims Dr. Perego registered as the organizer, "the controlling member, the only named manager, and the registered agent." *Id.* When the loan agreement/contract to sell securities was confected and the Note was executed, the domicile and mailing address for CB Medical was 1201 Bolton Ave., Alexandria, Louisiana 71301 – the same address listed in the Note for CB Medical Research and Dr. Perego. *Id.* at 5-6.

Dr. Templeton asserts CB Medical was formed in 2017 to seek and operate a medical marijuana program and was an applicant for the LSU-sponsored program. *Id.* at 6. CB Medical lost its bid for one of two medical marijuana licenses issued by the Louisiana Department of Agriculture & Forestry. *Id.* Dr. Templeton claims CB

3

Medical owns 7,000,000 shares of common stock (17.5% ownership) in One World Pharma, Inc., of which Dr. Perego is a director. *Id.* One World Pharma, Inc. acquired OWP Ventures, Inc. (and indirectly, One World Pharma SAS, a wholly owned Columbian company) in February 2019. *Id.* Dr. Templeton alleges One World Pharma, Inc., through One World Pharma SAS, engages in the licensed manufacturing of cannabis products to treat medical conditions. *Id.*

Dr. Templeton executed the Note under the belief he was loaning funds to and receiving an equity interest in a duly organized, validly existing entity that was managed and controlled by Dr. Perego and that participated in sanctioned medical marijuana programs. *Id.* at 7. He asserts CB Medical is the only entity that fits this description. *Id.* He claims Defendants have not delivered the "90,000 shares" in CB Medical and have not paid the $10,000 fee, the remaining principal, or the accrued interest due. *Id.*

Dr. Templeton asserts the following claims: (1) violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b-5, 17 C.F.R. § 250.10b-5 (Count I); (2) violations of the Louisiana Securities Act, La. R.S. 51:712 (Count II); (3) reformation of the Promissory Note (Count III); (4) breach of contract/bad faith breach of contract (Count IV); (5) fraud/fraud in the inducement (Count V); (6) detrimental reliance (Count VI); (7) negligent misrepresentation (Count VII); and (8) specific performance (Count VIII) . ECF No. 1 at 7-22.

Dr. Templeton seeks reformation of the Note to declare CB Medical as the Maker and Issuer. ECF No. 1 at 22. Dr. Templeton seeks a finding of bad faith

4

breach of contract on the Note and a monetary judgment "for the unpaid principal and other sums due under the Note, together with contractual interest on all sums due from the maturity or other accrual date until paid." *Id.* He also seeks an order directing Defendants to issue the equity interest in CB Medical as required by the Note.  ECF No. 1 at 22-23.

CB Medical filed its first Rule 12(b)(6) Motion to Dismiss (ECF No. 8), arguing that the Complaint (ECF No. 1) failed to state a claim for relief against CB Medical. ECF No. 8.  Dr. Perego answered, asserting various affirmative defenses.  ECF No. 9.  In his Answer (ECF No. 9), Dr. Perego claims CB Medical Research was incorporated on October 12, 2017 in Nevada, four days before the Note was signed. ECF No. 9 at 2.  Dr. Perego asserts CB Medical Research – the Maker of the Note – is a separate legal entity from CB Medical.  *Id.*

Dr. Templeton responded with an Amended Complaint (ECF No. 13) and an Opposition (ECF No. 15).  He added Defendant CB Medical Research and new factual allegations against CB Medical.  ECF No. 13.  Dr. Templeton argues that his Complaint (ECF No. 1), as amended (ECF No. 13), alleges enough facts to state a claim for relief against CB Medical.  ECF No. 15.

CB Medical filed a second Rule 12(b)(6) Motion to Dismiss (ECF No. 21), arguing that Dr. Templeton's Amended Complaint (ECF No. 13) is insufficient.  ECF No. 21-1 at 10.  Dr. Templeton opposes, re-urging and incorporating his first Opposition (ECF No. 15). (ECF No. 25).  He contends he states at least three distinct and independent causes of action against CB Medical, each of which would make CB

Medical solidarily or directly liable for the obligations under the Note.  ECF No. 25 at 7.

II.    **Law and Analysis**

   A.    **Standards governing the Rule 12(b)(6) Motions to Dismiss.**

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6).  "[A] complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal citation and quotation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The court must view all well-pleaded facts in the light most favorable to the plaintiff.  *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016).

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.  *Iqbal*, 556 U.S. at 678.  A pleading comprised of labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement, will not stand.  *Id.*  Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief.  *Id.* at 679.

**B.** **CB Medical's Rule 12(b)(6) Motions to Dismiss (ECF Nos. 8, 21) should be denied because Dr. Templeton states plausible claims for relief against CB Medical.**

In its first Motion to Dismiss (ECF No. 8), CB Medical asserts it is not the Maker of the Note and is not alleged to be the Issuer of the securities which are the subject of the Complaint.  ECF No. 8-1 at 1.  CB Medical claims there is no allegation of connexity of CB Medical to any of the alleged misdeeds of Dr. Perego or CB Medical Research.  *Id.*  It argues Dr. Templeton fails to allege an actionable theory against it for liability under the Note.  *Id.* at 2-3.

CB Medical claims CB Medical Research was incorporated on October 5, 2017 in Nevada and was in good standing on the date the Note was executed.  *Id.* at 3.  CB Medical argues Dr. Templeton fails to allege CB Medical Research is the alter ego of CB Medical.  *Id.*  CB Medical further asserts Dr. Templeton fails to allege reverse corporate veil piercing or single business enterprise.  *Id.* at 4. Additionally, CB Medical contends Dr. Templeton fails to allege that Dr. Perego bound CB Medical as its agent to any obligation.  *Id.*

Dr. Templeton's Amended Complaint (ECF No. 13) adds Defendant CB Medical Research. ECF No. 13.  Dr. Templeton claims he had no knowledge of CB Medical Research's separate existence from CB Medical prior to Dr. Perego's recent disclosure. ECF No. 13 at 6.  Dr. Templeton also claims Dr. Perego never filed an annual report, performed legitimate business activities through CB Medical Research, or otherwise treated it as a going concern.  *Id.* at 7.  He contends Dr. Perego and CB Medical used CB Medical Research as a shell entity to shield CB Medical

from exposure under the Note and hide the real party-in-interest – CB Medical – from Dr. Templeton. *Id.*

Dr. Templeton claims CB Medical Research is not now, nor has it ever been, an entity that participated in sanctioned medical marijuana programs (or the pursuit thereof). *Id.* at 8-9. Dr. Templeton contends CB Medical Research never applied for the LSU-sponsored medical marijuana program and has never owned shares in One World Pharma, Inc. *Id.* at 8. Defendants represented to him that the Maker of the Note was an entity that actively sought to participate in sanctioned marijuana programs (or the pursuit thereof) in Louisiana, which Dr. Templeton asserts was in fact CB Medical. *Id.* at 9.

Dr. Templeton states Dr. Perego is a majority member/shareholder of both CB Medical Research and CB Medical, an officer and director of CB Medical Research, and a manager of CB Medical. *Id.* He claims Dr. Perego exerted unilateral, unified administrative control over both CB Medical and CB Medical Research from the same address. *Id.* at 10. He further claims Dr. Perego executed the Note in the name of, and incurred indebtedness on behalf of, CB Medical Research. *Id.* He contends Dr. Perego used the loan proceeds exclusively for the benefit of CB Medical and himself, and that CB Medical Research received no consideration from CB Medical for incurring the indebtedness under the Note. *Id.*

Dr. Templeton claims Dr. Perego inadequately capitalized CB Medical Research so it lacked sufficient funds to fulfill the obligations of the Note, and repaid the principal using his personal funds. *Id.* He asserts Dr. Perego did not adhere to

8

the required corporate formalities or respect the separateness of either entity when operating and managing CB Medical Research. *Id.* He contends both entities shared a common office at 1201 Bolton Ave., Alexandria, LA 71301. *Id.* He alleges the following new claims against Defendants: (1) liability of CB Medical for acts of its mandatary, Dr. Perego (Count IX); (2) single business enterprise (Count X); and (3) civil conspiracy to commit fraud (Count X[sic]). ECF No. 13 at 26-30.

Dr. Templeton opposes CB Medical's first Motion to Dismiss (ECF No. 8). ECF No. 15. He argues that his Complaint (ECF No. 1), as amended (ECF No. 13), alleges enough facts to state a claim for relief against CB Medical. ECF No. 15.

CB Medical's second Motion to Dismiss (ECF No. 21) argues CM Medical and CB Medical Research are separate and distinct entities, with Dr. Perego having an ownership interest in both. ECF No. 21-1 at 1. It contends that CB Medical Research is now an abandoned Nevada corporation and that CB Medical is a Louisiana limited liability company still in good standing. *Id.* CB Medical contends that the two entities were formed for separate business purposes, and except for Dr. Perego, had different individuals in starting the distinct companies. *Id.* CB Medical argues the allegations do not support an obligation of CB Medical for the Note entered by CB Medical Research. *Id.*

CB Medical asserts Dr. Templeton conflates CB Medical Research, CB Medical, and Dr. Perego to force specific performance of certain terms of the Note. *Id.* at 2. CB Medical contends that Dr. Templeton's amendment fails to cure certain deficiencies raised in its initial Motion to Dismiss (ECF No. 8). *Id.*

9

CB Medical claims the Note represents an alleged debt of CB Medical Research – not CB Medical. *Id.* at 3. CB Medical argues the Note provides that Dr. Templeton will be issued 90,000 shares – "securities" – in CB Medical Research at some future point. *Id.* CB Medical further argues Dr. Templeton fails to establish a cause of action against CB Medical to issue 90,000 membership units to him. *Id.* at 3-4. It contends the three new counts artificially create connexity between CB Medical and CB Medical Research. *Id.* at 4. CB Medical seeks dismissal of Dr. Templeton's claims against it under theories of mandate, the single business enterprise doctrine, and civil conspiracy.

### 1. Dr. Templeton states a plausible claim for relief against CB Medical under Louisiana mandate law.

CB Medical argues Dr. Templeton's Complaint (ECF No. 1) fails to allege Dr. Perego bound CB Medical, as its agent, to any obligation. ECF No. 8-1 at 4. CB Medical also argues Dr. Templeton's Amended Complaint (ECF No. 13) fails sufficient to establish that CB Medical was the principal of Dr. Perego and/or CB Medical Research through actual or apparent authority. ECF No. 21-1 at 5. CB Medical asserts Dr. Templeton inaccurately contends he is a third party to which CB Medical should be responsible for the misdeeds of its agent/mandatary Dr. Perego and/or CB Medical Research. *Id.*

CB Medical claims it is not, and has never been, a principal of Dr. Perego and/or CB Medical Research acting as agents. *Id.* CB Medical argues that the "doctrine of apparent authority" applies to innocent third parties if the principal first acts to manifest the alleged agent's authority and the third party reasonably relies

10

on the alleged agent's authority. *Id.* CB Medical contends Dr. Templeton does not allege facts that CB Medical made, or performed, any acts to him that would have manifested CB Medical Research's and/or Dr. Perego's authority to act on CB Medical's behalf. *Id.* CB Medical further contends that Dr. Templeton, an innocent third party, had an affirmative duty to ascertain whether Dr. Perego, the alleged mandatary, was granted authority by CB Medical to execute acts in its name. *Id.*

Dr. Templeton opposes, asserting CB Medical ignores Louisiana law. ECF No. 25 at 12-13. Dr. Templeton argues his allegations establish Dr. Perego and CB Medical Research were mandataries of CB Medical because CB Medical authorized and directed Dr. Perego and CB Medical Research to act on its behalf, including to transact with him. *Id.* at 13. He contends actual authority may be inferred by the facts alleged: (1) that Dr. Perego controls CB Medical; (2) that Dr. Perego solicited money from Dr. Templeton for his cannabis/marijuana company CB Medical; (3) that Dr. Perego directed Dr. Templeton to wire the money to One World Pharma for the apparent benefit of CB Medical which now owns a substantial equity interest in One World Pharma; and (4) that Dr. Perego sits on its Board of Directors. ECF Nos. 13 at 8, 25 at 14.

Dr. Templeton claims CB Medical relies on inapposite caselaw regarding apparent authority. ECF No. 25 at 14-15. He asserts that CB Medical relies on cases which deal with whether a putative agent had apparent authority. ECF No. 25 at 15. He contends that CB Medical, an undisclosed principal, may be held liable for acts of

11

his agent taken with actual authority and that apparent authority is inapplicable to the facts. ECF No. 25 at 16.

CB Medical responds that CB Medical Research does not have, and has never had, actual authority to act on its behalf. ECF No. 26 at 2. It contends Dr. Templeton fails to assert the means by which "actual authority" was granted to Dr. Perego and/or CB Medical Research. *Id.* It further contends Dr. Templeton fails assert any details that CB Medical granted express authority for CB Medical Research or Dr. Perego to execute a promissory note in its name. *Id.* at 4. CB Medical argues Dr. Templeton's allegations are conclusory. *Id.* CB Medical claims the Court cannot presume it is the principal of CB Medical Research. *Id.*

"A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." La. C.C. art. 2989. "Article 3020 provides that the principal is bound to perform the contracts the mandate establishes with a third party when the mandate is acting within the limits of his authority." *Cabana Partners, LLC v. Citizens Bank & Tr. Co.*, 269 So.3d 986, 990 (La.App. 1 Cir. 12/21/18). "Under this provision a principal, whether disclosed or undisclosed, is bound to perform the contracts that the mandatary, acting within the limits of his authority, made with third persons. A third person who contracts with the mandatary has a cause of action directly against the principal, whether disclosed or undisclosed." La. C.C. art. 3020, cmt. b.; *see also Resolution Tr. Corp. v. Gasper-Virgillio*, 27 F.3d 178, 180 (5th Cir. 1994) ("The Louisiana Supreme Court held in *Woodlawn Park Ltd. v. Doster Constr. Co., Inc.*,

623 So.2d 645, 648 (La.1993), that if the agent enters into a contract for the benefit of an undisclosed principal, the principal may be held liable under the contract.").

"The contract of mandate is not required to be in any particular form, except when the law prescribes a certain form." *Cabana Partners, LLC*, 269 So.3d at 990 (citing La. C.C. art. 2993); *see also* La. C.C. art. 2997 (describing certain transactions for which express authority is required). Article 2997 lists specific acts for which the authority must be given expressly, including to "[c]ontract a loan or, acknowledge or make a remission of a debt, or become a surety" and to "[d]raw or endorse promissory notes and negotiable instruments." La. C.C. art. 2997(3)-(4).

Authority may be established through either actual authority or apparent authority. *See Boulos v. Morrison*, 503 So.2d 1, 3 (La. 1987) ("As between the principal and agent the limit of the agent's authority to bind the principal is governed by the agent's actual authority. As between the principal and third persons, the limit of an agent's authority to bind the principal is governed by apparent authority.")[1] Actual authority may be either express or implied. *Id.* "Express actual authority is

---

[1] "Apparent authority is created as to a third person by conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to the act done on his behalf by the person purporting to act for him. Apparent authority is distinguished from actual authority because it is the manifestation of the principal to the third person rather than to the agent that is controlling." *RSDC Holdings, LLC v. M.G. Mayer Yacht Servs., Inc.*, 429 F.Supp.3d 246, 257–58 (E.D. La. 2019) (citing *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985)); *see also* La. C.C. art. 3021. Here, Dr. Templeton argues that because CB Medical was an undisclosed principal, apparent authority is inapplicable. ECF No. 15-16. There is no assertion that CB Medical manifested anything to Dr. Templeton. Dr. Templeton seeks to establish Dr. Perego had mandatary authority through actual authority, not apparent authority. ECF No. 25 at 14-15. Therefore, the Court need only address whether Dr. Templeton alleges actual authority, express or implied, sufficient to state a claim for relief under Louisiana mandate law.

created by the oral or written agreement between the principal and the agent." *Hous. Expl. Co. v. Halliburton Energy Servs., Inc.*, 359 F.3d 777, 780 (5th Cir. 2004) (citing *AAA Tire & Expert, Inc. v. Big Chief Truck Lines, Inc.*, 385 So.2d 426, 429 (La. App. 1 Cir. 1980)).

"[A]n agency relationship is created by implication "when, from the nature of the principal's business and the position of the agent within that business the agent is deemed to have permission from the principal to undertake certain acts which are reasonably related to the agent's position and which are reasonable and necessary concomitants of the agent's express authorization." *AAA Tire & Export, Inc.*, 385 So.2d at 429. Implied authority is established by the words and interactions of the parties, together with the circumstances of the case. *Anderson Window & Patio Co., Inc., v. Dumas*, 560 So. 2d 971, 975 (La. App. 4th Cir. 1990) (citing *Sales Purchase Corp. v. Puckett*, 417 So. 2d137 (La. App. 2nd Cir. 1982)).

If the mandatary had no actual or apparent authority, the principal may still be bound to contracts made by a mandatary with a third party if the principal ratifies the mandatary's unauthorized acts. *See* La. C.C. art. 3008. Louisiana law provides that ratification occurs when "the principal, knowing of the contract, does not repudiate it but accepts its benefits." *RSDC Holdings, LLC v. M.G. Mayer Yacht Servs., Inc.*, 429 F.Supp.3d 246, 257–58 (E.D. La. Feb. 1, 2019) (citing *Bamber Contractors, Inc. v. Morrison Eng'g & Contracting Co.,* 385 So. 2d 327, 331 (La. App. 1980)). "Tacit ratification results 'when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefits of that obligation.'" *Metal*

14

*Bldg. Components, Inc. v. Gibson Roofers, Inc.*, CIV. A. 97-2185, 1999 WL 225453, at *12 (E.D. La. Apr. 15, 1999) (citing La. C.C. art. 1843).

Here, it is factually plausible that Dr. Perego was acting as a mandatary for CB Medical. Dr. Templeton alleges Dr. Perego is the controlling officer-director-shareholder of CB Medical Research and a member-manager of CB Medical. ECF No. 13 at 2. Dr. Templeton further alleges CB Medical is a "manager managed limited liability company" registered in Louisiana on January 31, 2017 by Dr. Perego as the organizer, "the controlling member, the only named manager, and the registered agent." ECF No. 13 at 2, 5.

CB Medical is a limited liability company that validly exists under Louisiana laws with its principal place of business in Rapides Parish. ECF No. 13 at 2. Generally, "[a] member, manager, employee, or agent of a limited liability company acting in such capacity for the company is not personally liable for any debt, obligation, or liability of the LLC." *Alexander Bldg., LLC v. Queen & Crescent Hotel, LLC*, CIVA 08-1513 F, 2008 WL 4373033, at *2 (E.D. La. Sept. 23, 2008); *see also* La. R.S. 12:1320(B). However, a member who exceeds his authority may be held personally liable. *Id.* (citations omitted). Additionally, unless an L.L.C.'s articles of organization expressly limit its management to specified members, all members have management rights and duties. *See* La. R.S. 12:1311 and 12:1312. Likewise, unless management is so limited, "[e]ach member . . . is a mandatary of the [L.L.C.] for all matters in the ordinary course of its business other than the alienation, lease, or encumbrance of its immovables . . . ." La. R.S. 12:1317(A).

Dr. Templeton further alleges "Dr. Perego acted at the direction of, and as authorized by, CB Medical and within the limits of his authority when he executed the Note and induced plaintiff to enter to the same." *Id.* at 4.  He also claims CB Medical authorized and directed Dr. Perego and/or CB Medical Research to perform the alleged acts, and that Dr. Perego and CB Medical Research were acting within the limits of their authority and for the benefit of CB Medical when they negotiated and executed the Note. *Id.* at 27.

Dr. Templeton alleges he wired the funds to One World Pharma, a company in which CB Medical owns 7,000,000 shares of common stock and Dr. Perego serves as the director.  *Id.* at 5, 7-8.  He contends Dr. Perego paid the $100,000 sum on the loan with a check from his personal funds.  *Id.* at 5.

Dr. Templeton asserts that "a principal, whether disclosed or undisclosed, is bound to perform the contracts that the mandatary, acting within the limits of his authority, made with third persons" and that the "third person who contracts with the mandatary has a cause of action directly against the principal."  *Id.* at 26-27 (citing La. C.C. art. 3020 cmt. (b); *Woodlawn Park Ltd. P'ship v. Doster Const. Co.*, 623 So.2d 645, 648 (La. 1993); *Huntsman, LLC v. Blessey Marine Serv., Inc.*, 2016 WL 1031330 at *4 (E.D. La. Mar. 15, 2016)).

Dr. Templeton states a factually plausible claim against CB Medical under Louisiana mandate law.   He is not required to prove his allegations at this stage of the proceedings but must plead factual allegations sufficient "to raise a right to relief

above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555; (2007). He has done so.

### 2.    <u>Dr. Templeton states a plausible claim for relief against CB Medical under the single business enterprise doctrine.</u>

CB Medical argues Dr. Templeton's Complaint (ECF No. 1) fails to allege claims supporting its substitution for CB Medical Research under the doctrines of alter ego, reverse veil piercing, or single business enterprise. ECF No. 8-1 at 3-4. It contends Dr. Templeton fails to allege factors related to adherence of corporate formalities under the alter ego doctrine. *Id.* at 4. CB Medical claims Dr. Templeton seeks reverse corporate veil piercing to "impute liability upstream" to it. *Id.*

CB Medical contends Dr. Templeton's Amended Complaint (ECF No. 13) fails to state a claim under the single business enterprise doctrine because Dr. Templeton wrongfully seeks to change his ownership interest in, and from, CB Medical Research to CB Medical. ECF No. 21-1 at 7. CB Medical claims it is not a single business enterprise. *Id.* It states Dr. Templeton does not allege how 90,000 shares of stock in CB Medical Research translates into an equivalent interest of membership units in CB Medical. *Id.* CB Medical argues that, under *Brown v. ANA Insurance Group*, 994 So.2d 1265, 1266, n. 2 (La. 2008), Dr. Templeton is precluded from having his CB Medical Research ownership interest transformed into a CB Medical ownership interest. *Id.*

Dr. Templeton asserts CB Medical does not challenge that his allegations satisfy the factors in *Green v. Champion Ins.* Co., 577 So. 2d 249, 257-58 (La. App. 1 Cir. 1991). ECF No. 25 at 8. He contends that CB Medical's reliance on *Brown* is

based on a misunderstanding of his claims. *Id.* at 8-9. Dr. Templeton does not seek to use the single business enterprise doctrine to transform his ownership interest of CB Medical Research into ownership of CB Medical. *Id.* at 9. He states he has no ownership in CB Medical Research. *Id.* Instead, he claims the right to receive an ownership interest in CB Medical directly because CB Medical was the intended Issuer and Maker of the Note. *Id.*

CB Medical replies that Dr. Templeton has a colorable ownership in CB Medical Research. ECF No. 26 at 5. But it states that Dr. Templeton asks the Court to change his prospective interest from CB Medical Research to CB Medical. *Id.*

Louisiana law is determinative of whether entities constitute a "single business enterprise." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579 (5th Cir. 2010) (citing *Green*, 577 So. 2d at 257-58). The "single business enterprise doctrine" is "a theory for imposing liability where two or more business entities act as one." *Brown*, 994 So.2d at 1266, n. 2 (citing *Green*, 577 So.2d 249).[2] "[W]hen corporations integrate their resources in operations to achieve a common business purpose, each business may be held liable for wrongful acts done in pursuit of that purpose." *Id.* If

---

[2] Generally, "[c]orporations function as distinct legal entities, separate from the individuals who own them, and their shareholders are not generally liable for the debts of the corporation." *Hollowell v. Orleans Regional Hosp., LLC*, 217 F.3d 379, 385 (5th Cir. 2000) (citing *Riggins v. Dixie Shoring Co.*, 590 So.2d 1164, 1167 (La. 1991), *reh'g en banc den'd*, 232 F.3d 212 (5th Cir. 2000)). The United States Court of Appeal for the Fifth Circuit has described the single business enterprise theory as a "veil piercing theory . . . implemented to disregard the concept of corporate separateness when a juridical person is used to 'defeat public convenience, justify wrong, protect fraud, or defend crime.'" *Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 461 (5th Cir. 2016) (citing *In re Ark–La–Tex Timber Co.*, 482 F.3d 319, 335 (5th Cir. 2007)).

18

a group of entities is found to be a single business enterprise, a court may disregard the concept of corporate separateness to extend liability to each of the affiliated corporations to prevent fraud or to achieve equity. *Green*, 577 So.2d at 259; *see also In re: Ark-La-Tex Timber Co.*, 482 F.2d 319, 335 (5th Cir. 2007) (citing Louisiana appellate court cases).

A single business enterprise is determined under *Green*'s 18-factor test:

(1) corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
(2) common directors or officers;
(3) unified administrative control of corporations whose business functions are similar or supplementary;
(4) directors and officers of one corporation act independently in the interest of that corporation;
(5) corporation financing another corporation;
(6) Inadequate capitalization ("thin incorporation");
(7) corporation causing the incorporation of another affiliated corporation;
(8) corporation paying the salaries and other expenses or losses of another corporation;
(9) corporation receiving no business other than that given to it by its affiliated corporations;
(10) corporation using the property of another corporation as its own;
(11) noncompliance with corporate formalities;
(12) common employees;
(13) services rendered by the employees of one corporation on behalf of another corporation;
(14) common offices;
(15) centralized accounting;
(16) undocumented transfers of funds between corporations;
(17) unclear allocation of profits and losses between corporations; and
(18) excessive fragmentation of a single enterprise into separate corporations.

*Green*, 577 So.2d at 257-58. No one factor is dispositive. *Id.* Whether or not two or more entities comprise a single business enterprise is a factual determination to be decided by the trier of fact. *Coleman v. Burgandy Oaks, L.L.C.*, 71 So.3d 352, 355 (La. App. 3 Cir. 6/8/11); *see also Williams v. Chesapeake Operating, Inc.*, CV 10-1906,

2011 WL 13160764, at *3, n.3 (W.D. La. Sept. 14, 2011) (citing *Talen's Landing, Inc. v. M/V Venture, II*, 656 F.2d 1157, 1160 (5th Cir. 1981)).

Here, Dr. Templeton alleges detailed facts that CB Medical and CB Medical Research have operated as a single business enterprise.  ECF No. 13 at 28. Specifically, Dr. Templeton alleges that CB Medical and CB Medical Research acted as one entity and integrated their resources to achieve a common business purpose, including participating in sanctioned medical marijuana programs (or the pursuit thereof) and the Note.  ECF No. 13 at 28.  Dr. Templeton also alleges the following: (1) common, majority ownership by Dr. Perego; (2) Dr. Perego as a common officer and/or director; (3) Dr. Perego exerts unilateral, unified administrative control over both CB Medical and CB Medical Research from the same location, 1201 Bolton Avenue, Alexandria, LA; (4) Dr. Perego executed the Note for the exclusive benefit of CB Medical and to the detriment of CB Medical Research, with no ascertainable benefit to CB Medical Research; (5) inadequate capitalization of CB Medical Research; (6) noncompliance with corporate formalities; (7) a common office at 1201 Bolton Avenue, Alexandria, LA; (8) centralized accounting; and (9) undocumented transfers of funds between CB Medical Research and CB Medical.  *Id.*

Additionally, Dr. Templeton alleges Dr. Perego referred to his controlled entity as "CB Medical" in discussions regarding lending terms.  ECF No. 13 at 3.  He asserts the common address listed in the Note for the Issuer and Guarantor is 1201 N. Bolton Avenue, Alexandria, LA.  *Id.* at 5.  He alleges Dr. Perego instructed him to – and he did – "wire the $100,000 loan/investment funds to the account of One World Pharma

LLC in Florida." *Id.* Dr. Templeton claims Dr. Perego represented that One World Pharma was an entity related to or affiliated with the Issuer of the Note. *Id.* He asserts CB Medical reportedly owns 7,000,000 shares of common stock in One World Pharma and that Dr. Perego is serving as a director. *Id.* at 7-8. He also asserts One World Pharma, through its subsidiary One World Pharma SAS, engages in the manufacturing of cannabis products. *Id.* at 8.

Dr. Templeton claims Dr. Perego paid the $100,000 sum on the loan with a check from his personal funds. *Id.* at 5. He contends CB Medical Research is "in default" according to the Nevada Secretary of State, having been formed only seven days prior to approaching him about the Note. *Id.* at 6. Dr. Templeton alleges Dr. Perego never filed an annual report, never performed legitimate business activities through CB Medical Research, and otherwise never treated CB Medical Research as a "going concern." *Id.* at 7.

Dr. Templeton is not required to advance every factual allegation to support a factual finding that CB Medical operated as a single business enterprise. *See Bd. of Comm'rs of Port of New Orleans v. Lexington Ins. Co.*, CIV.A. 07-6608, 2007 WL 4116096, at *2 (E.D. La. Nov. 15, 2007) *(citing GE Capital Corp. v. Posey,* 415 F.3d 391, 396 (5th Cir.2005)). Dr. Templeton's single business enterprise claim is supported with factual allegations sufficient to give CB Medical fair notice of the claim and the factual grounds on which the claim rests. *Iqbal*, 559 U.S. 662 (2009); *see also Shell Offshore Inc. v. Eni Petroleum*, 2017 WL 4812409 (E.D. La. 2017) (finding plaintiff pleaded sufficient facts to state a breach of contract claim against

an affiliate under the single enterprise theory); *Precht v. Global Tower, L.L.C.*, 2016 WL 8710024, at *3 (W.D. La. Aug. 12, 2016) (finding allegations under the 18-factor test were sufficient to state a claim that affiliated corporations were operated as a single business enterprise).

### 3. Dr. Templeton alleges a plausible claim for relief against CB Medical for civil conspiracy.

CB Medical argues Dr. Templeton's civil conspiracy claim under La. C.C. art. 2324 does not apply to breach of contract claims. ECF No. 21-1 at 8. CB Medical asserts the actionable element is the intentional tort that conspirators agreed to commit and committed. *Id.* It contends Dr. Templeton must establish "an agreement existed to commit an illegal or tortious act, which act was actually committed, which resulted in the plaintiff's injury, and that there was an agreement as to the intended outcome or result." *Id.* at 8-9 (citing *Barbe v. Ocwen Loan Servicing, L.L.C.*, 383 F.Supp.3d 634, 645 (E.D. La. 2019) (citations omitted)).

CB Medical argues that Dr. Templeton fails to allege facts showing a "meeting of the minds" or "collusion between the parties." *Id.* at 9-10. It contends Dr. Templeton's claims under La. C.C. art. 2324 should be dismissed for failure to allege an agreement or meeting of the minds between CB Medical, Dr. Perego, and CB Medical Research to commit wrongdoing. *Id.* at 9 (citing *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 526 (5th Cir. 2016) (dismissing civil-RICO conspiracy claims where no agreement was alleged under La. C.C. art. 2324)).

Dr. Templeton responds that he alleges multiple counts of intentional acts under La. C.C. art. 2324. ECF No. 15 at 18-20. Dr. Templeton asserts a "reasonable

inference" can be drawn that CB Medical is liable for damage caused by the "alleged misconduct" of conspiring with Dr. Perego and CB Medical Research to commit an intentional and willful act of fraud.  *Id.* at 20.  He argues CB Medical ignores his claim for fraud.  ECF No. 25 at 20.  Dr. Templeton agrees that Louisiana courts have interpreted La. C.C. art. 2324 to apply to tortious conduct as opposed to breach of contract claims.  *Id.*  However, he contends that he may pursue claims for both breach of contract and for fraud.  *Id.* (citing Louisiana state and federal cases).

Dr. Templeton argues that CB Medical, the undisclosed principal, was a beneficiary of the fraudulent acts and is a proper party.  *Id.*  He contends that a claim for civil conspiracy based on fraud may form the basis for liability, even where it relates to a contract.  *Id.* at 20-21.  Dr. Templeton claims he alleges specific facts that show a meeting of the minds or agreement to defraud him.  *Id.*

CB Medical retorts that Dr. Templeton fails to identify any correspondence, conversation, or writing, or any allegation that Dr. Perego's conversations with Dr. Templeton blurred the distinction between the two entities. ECF No. 26 at 6.

Louisiana Civil Code article 2324(A) provides that "he who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."  La. C.C. art. 2324(A).  "The actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and actually commit in whole or in part." *Ross v. Conoco, Inc.,* 828 So.2d 546, 552 (La. 2002) (citing *Butz v. Lynch,* 710

So.2d 1171, 1174 (La.App. 1st Cir. 4/08/98), *writ denied* 721 So.2d 473 (1998)); *see also Chrysler Credit Corp. v. Whitney Nat. Bank,* 51 F.3d 553, 557 (5th Cir. 1995).

"[T]o recover under this theory of liability, a plaintiff must prove that an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury." *Butz*, 710 So.3d at 1174 (citing *Silver v. Nelson*, 610 F.Supp. 505, 516-17 (E.D. La. 1985)). "The plaintiff must therefore prove an unlawful act and assistance or encouragement that amounts to a conspiracy." *Chrysler Credit Corp.,* 51 F.3d at 557. "This assistance or encouragement must be of such quality and character that a jury would be permitted to infer from it an underlying agreement and act that is the essence of the conspiracy." *Id.*

Dr. Templeton alleges fraud and securities violations underlying the alleged civil conspiracy. ECF No. 13 at 11, 13, 15, 19, and 29. If Dr. Templeton succeeds on his underlying claims, Article 2324 could be applied to hold CB Medical solidarily liable with CB Medical Research and/or Dr. Perego. *See Dietz v. Dietz*, CIV. 08-0521, 2009 WL 2707402, at *11 (W.D. La. Aug. 27, 2009). Dr. Templeton "need only present a *prima facie* case for the alleged tort for this Court to conclude Article 2324 might apply, and conclusory allegations contained in the pleadings are not sufficient." *Id.*

"An action for an alleged fraudulent activity may be based on breach of contract or in tort." *Capdeboscq v. Francis*, CIV.A. 03-0556, 2004 WL 1418391, at *1, n.3 (E.D. La. June 23, 2004) (citing *Pittman v. Piper,* 542 So.2d 700, 702 (La. App. 4 Cir. 1989)). "Based on fraud or fraudulent misrepresentation as a viable claim in tort, it is unnecessary to establish the contract issues of privity, consideration and breach of

contract." *Id.*  To successfully plead fraud, a plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 362 (5th Cir.2004) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

Here, Dr. Templeton alleges that CB Medical "conspired" with Dr. Perego and CB Medical Research under Article 2324 in connection with his underlying allegations of fraud.  Fraud is an intentional tort. *See In re Mercer,* 246 F.3d 391, 421 (5th Cir. 2001); *see also Lewis v. Fresne,* 252 F.3d 352, 359 (5th Cir. 2001).   A conspiracy to commit fraud is subject to the particularity requirements of Rule 9(b). *Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953, 960 (5th Cir. 1994). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); *see Leatherman v. Tarrant Cty. Narcotics Intelligence Unit*, 507 U.S. 163, 168-69 (1993); *Hart v. Bayer Corp.*, 190 F.3d 239, 247, n.6 (5th Cir. 2000). While fraud must be pleaded with particularity, it "may be pleaded without long or highly detailed particularity." *Guidry*, 188 F.3d at 632.  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

"Louisiana jurisprudence indicates that the following are the elements of the tort of fraud: 1) a misrepresentation of material fact; 2) made with the intent to deceive; 3) reasonable or justifiable reliance by the plaintiff; and 4) resulting injury. The intent to deceive is a specific intent." *Black Lake Land & Oil, L.L.C. v. Audubon*

*Ins. Co.*, 2:09 CV 02227, 2011 WL 4591087, at *2 (W.D. La. Sept. 29, 2011), *judgment entered,* 2:09-CV-2227, 2011 WL 4574542 (W.D. La. Sept. 29, 2011) (citing *Wooley v. Lucksinger,* 14 So.3d 311, 37879 (La.App. 1st Cir.2008)); *see also* La. C.C. art. 1953; *Guidry v. U.S. Tobacco Co.,* 188 F.3d 619, 627 (5th Cir.1999)).  Similarly, "[t]o state a securities-fraud claim under Section 10(b), and Rule 10b-5, plaintiffs must plead (1) a misstatement or omission; (2) of a material fact; (3) made with scienter;[3] (4) on which the plaintiffs relied; and (5) that proximately caused the plaintiffs' injuries." *Southland Sec. Corp.*, 365 F.3d at 362 (citing *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir. 1997)).

Dr. Templeton identifies with particularity the alleged fraudulent statements. Dr. Templeton asserts that on October 12, 2017, Dr. Perego contacted him seeking "a short-term working capital loan to cover operating costs of [his] controlled entity – an existing company engaged, directly or indirectly, in sanctioned medical marijuana programs (or the pursuit thereof)."  ECF No. 13 at 3, 9.  He contends Dr. Perego referred to his controlled entity as "CB Medical in discussion with Dr. Templeton about lending terms."  *Id.* at 3.  Relying on such representations and for an equity interest value in such company, Dr. Templeton contends he loaned Dr. Perego's "controlled entity" $100,000.  *Id.* at 4.

Additionally, in wiring the funds to One World Pharma, Dr. Templeton alleges Dr. Perego, acting on behalf of CB Medical, represented that One World Pharma was

---

[3] Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Southland Sec. Corp.*, 365 F.3d at 362 (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003).

an entity related to or affiliated with the Issuer of the Note. *Id.* at 5. Dr. Templeton alleges:

> In connection with the sale of securities to Dr. Templeton, Dr. Perego—acting individually and on behalf of CB Medical, LLC, as its controlling member/manager—intentionally and knowingly misstated and omitted material facts on which Plaintiff relied in making his decision to make the loan and invest in the entity identified as CB Medical Research, Inc. Defendants' manipulative and deceptive representations and omissions made in connection with the contract to sell securities have caused Dr. Templeton damages.

ECF No. 13 at 11-12.

Dr. Templeton further asserts the "intentional misrepresentations and omissions" were made by Dr. Perego, acting individually and on behalf of CB Medical, to Dr. Templeton, including:

> (1) the identity of the company to which funds were being loaned; (2) the fact that C.B. Medical Research, Inc. was not the entity that had actively participated, directly or indirectly, in sanctioned medical marijuana programs (or the pursuit thereof) in Louisiana; (3) the identity of the entity that would issue equity securities to Dr. Templeton; and (4) the fact that equity securities would not be issued to Dr. Templeton upon the "execution of documents," when Dr. Perego never presented such "documents" for execution and either had no such intention or believed he could unilaterally rescind the obligation.

ECF No. 13 at 12. Dr. Templeton identifies that these "intentional misrepresentations and omissions" were made to him from October 12, 2017 through October 16, 2017. *Id.* He also alleges that the misstatements were "all made or effected by Dr. Perego at the offices of Alexandria Urology Associates, L.L.P., 1201 North Bolton Avenue, Alexandria, Louisiana." *Id.*

Dr. Templeton claims the "material misstatements were knowingly made" and the "omission of material information was knowingly withheld in order to further

deceive, manipulate, and defraud Dr. Templeton, and to induce the delivery and investment of cash to and for the benefit of Defendants." *Id.* He also claims that "but for the fraud perpetrated by Defendants" he "would not have engaged in the lending transaction/contract to sell securities." *Id.* at 13.

Dr. Templeton contends Dr. Perego, acting individually and on behalf of CB Medical, intentionally and knowingly mispresented the business entity appearing as Maker and Issuer of the loan/investment contract as CB Medical Research. ECF No. 13 at 15. He asserts this was either a deliberate effort to gain an unjust advantage and/or cause loss or inconvenience to Dr. Templeton, including falsely promising to issue 90,000 shares in CB Medical Research – an entity that Dr. Perego knew was not the entity that had actively participated, directly or indirectly, in sanctioned medical marijuana programs (or the pursuit thereof) in Louisiana. *Id.* He contends that "Dr. Perego, acting individually and on behalf of CB Medical, LLC, intentionally perpetrated this fraud in an effort to deny Mr. Templeton his bargained for economic benefit – the issuance of a substantial equity interest in CB Medical, LLC – with respect to the risky short-term lending transaction at issue." *Id.* at 15-16.

Dr. Templeton further states that:

On October 16, 2017, Dr. Perego, acting individually and on behalf of CB Medical LLC, was well aware that: (1) CB Medical Research, Inc. was not the entity that actively participated, directly or indirectly, in sanctioned medical marijuana programs (or the pursuit thereof) in Louisiana; and (2) there was a duly organized, validly operating entity (in good standing) by the name of CB Medical, LLC, which was registered in the state of Louisiana on January 31, 2017, and of which Dr. Perego was the organizer, majority member, manager, and registered agent.

ECF No. 13 at 17.

Dr. Templeton also contends that "Dr. Perego – acting individually and on behalf of CB Medical, LLC and CB Medical Research, Inc. – fraudulently induced Dr. Templeton to enter into the lending arrangement/contract to sell securities." *Id.* at 19. He was offered "an investment opportunity in CB Medical Research, Inc. (now known to be CB Medical, LLC), as part of the terms for a lending transaction." *Id.* at 20. He states the purpose of the transaction was to provide immediate cash flow to CB Medical via a short-term loan with compensation to Dr. Templeton in the form of a $10,000 fee, payment of interest, and issuance of equity interest in Dr. Perego's medical marijuana licensing venture, now known to be CB Medical. *Id.* at 20.

Dr. Templeton further alleges:

> As previously set forth in Counts I, II, and V above, an agreement existed among the Defendants to defraud Dr. Templeton and induce him to make a risky, short-term working capital loan of $100,000 to Dr. Perego's controlled business entity. Without the promise of the $10,000 fee and issuance of the equity interest, Dr. Templeton would not have engaged in the risky, short-term working capital loan to Dr. Perego's controlled company.

ECF No. 13 at 29.

The Court must accept Dr. Templeton's factual allegations as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009). Dr. Templeton's allegations are sufficient to state a claim against CB Medical for civil conspiracy under Article 2324.

III.  **Conclusion**

Because Dr. Templeton's Complaint (ECF No. 1), as amended (ECF No. 13), states claims for relief against CB Medical under Louisiana mandate law, the single business enterprise doctrine, and civil conspiracy under La. C.C. art. 2324;

IT IS RECOMMENDED that CB Medical's Rule 12(b)(6) Motions to Dismiss (ECF No. 8, 21) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

SIGNED on Wednesday, September 30, 2020.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE

30