UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

DR. LANCE E. TEMPLETON                   CIVIL ACTION NO. 1:19-CV-01292

VERSUS                                   JUDGE DAVID C. JOSEPH

CB MEDICAL, LLC AND                      MAGISTRATE JUDGE JOSEPH
DR. KENNETH L. PEREGO II                 PEREZ-MONTES

## MEMORANDUM RULING

Before the Court is the Report and Recommendation (the "R&R") of Magistrate Judge Perez-Montes [Doc. 28] on two Rule 12(b)(6) Motions to Dismiss (collectively, the "Motion") filed by Defendant CB Medical, LLC ("CB Medical") in the above-captioned matter. [Docs. 8, 21]. The R&R finds that the Plaintiff's Complaint, as amended, states plausible claims for relief against CB Medical and thus recommends denial of CB Medical's Motion. [Doc. 28]. CB Medical timely objected to the R&R. [Doc. 29]. After a *de novo* review of the record, the Court adopts in part and overrules in part the R&R. Accordingly, for the following reasons, the Motion is GRANTED in part and DENIED in part.

## BACKGROUND

This matter arises from a business dispute between two urologists, the plaintiff, Dr. Lance E. Templeton ("Dr. Templeton"), and defendant Dr. Kenneth L. Perego II ("Dr. Perego"), both of whom are practicing physicians in Alexandria, Louisiana. In addition to his medical practice, Dr. Perego is a controlling manager and shareholder in two business entities purportedly engaged in the medical

1

marijuana industry: CB Medical and CB Medical Research, Inc. ("CB Research"). [Doc. 13]. Dr. Perego also serves as a director of One World Pharma, Inc. ("One World"), a publicly traded Nevada corporation. [*Id.*]. One World likewise engages in business related to the medical marijuana industry. [*Id.*]. CB Medical owns 7 million shares of common stock (representing 17.5 percent ownership) in One World. [*Id.*].

On October 4, 2019, Dr. Templeton initiated this action to recover damages resulting from CB Research's alleged breach of an investment agreement he negotiated with Dr. Perego. [Doc. 1]. Specifically, on October 16, 2017, Dr. Perego executed a promissory note on behalf of CB Research to secure a $100,000 investment from Dr. Templeton (the "Investment"). [Doc. 13-1]. Under the terms of the Investment, CB Research agreed to repay the $100,000 no later than November 1, 2017, along with a $10,000 fee, with any amounts due and owing after the maturity date accruing at 12 percent interest. [*Id.*]. The terms of the Investment also provided that Dr. Templeton would receive an equity interest of 90,000 shares in CB Research. [*Id.*]. Accordingly, on October 17, 2017, Dr. Templeton wired his $100,000 investment, per Dr. Perego's instructions, into a Florida bank account held by One World Pharma, LLC. [*Id.*].

CB Research failed to repay the loan by the maturity date, thus placing the Investment into default. [*Id.*]. However, on June 21, 2018, Dr. Perego repaid Dr. Templeton the $100,000 principal sum on a check written from Dr. Perego's personal funds. [*Id.*]. Still outstanding on Dr. Templeton's original investment, however, is the $10,000 fee, accrued interest, and the promised equity interest in CB Research. [*Id.*].

All parties agree that CB Research is now an abandoned entity devoid of assets. [Docs. 13, 29].

In his original Complaint, Dr. Templeton brought claims against CB Medical for: (i) violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b) and Rule 10b-5, 17 C.F.R. § 250, 10b-5; (ii) violation of the Louisiana Securities Act; (iii) reformation of obligation; (iv) bad faith breach of contract; (v) fraud and fraud in the inducement; (vi) detrimental reliance; (vii) negligent misrepresentation; and (viii) specific performance. [Doc. 1].  On November 14, 2019, CB Medical filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Dr. Templeton's claims against it should be dismissed because the pleadings do not support any obligation on the part of CB Medical in connection with the promissory note. [Doc. 8]. Thereafter, Dr. Templeton filed his First Amended and Restated Complaint, which contained additional allegations of: (i) a mandatary relationship between CB Medical and Dr. Perego and/or CB Research; (ii) the existence of a "single business enterprise"; and (iii) a civil conspiracy to commit fraud. [Doc. 13].

Dr. Templeton's additional theories of liability maintain, generally, that although CB Medical was not a party to the promissory note, it should nonetheless be held liable for CB Research's default. Primarily, Dr. Templeton alleges that Dr. Perego and CB Medical used CB Research as a shell entity to shield CB Medical from liability under the promissory note. [*Id.*]. In this regard, Dr. Templeton alleges that during negotiations, Dr. Perego represented that the loan to CB Research would cover the operating costs of his controlled entity, CB Medical. [Doc. 13]. Dr. Templeton

3

further alleges that CB Medical and CB Research share the same domicile and mailing address. [*Id.*].[1]

On December 30, 2019, CB Medical filed a Motion to Dismiss the First Amended and Restated Complaint [Doc. 21], arguing that the three additional theories raised in Dr. Templeton's First Amended and Restated Complaint do not support plausible causes of action against CB Medical. [Doc. 21-1]. Dr. Templeton opposed the Motion on January 9, 2020. [Doc. 25], to which CB Medical filed a reply brief on January 14, 2020. [Doc. 26]. The Magistrate Judge filed his R&R [Doc. 28] on September 30, 2020. CB Medical filed an objection to the R&R [Doc. 29] on October 13, 2020, to which Dr. Templeton responded [Doc. 34] on October 26, 2020.  The issues presented have been fully briefed and are ripe for review.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of a plaintiff's claims before filing its answer when the pleadings, on their face, fail "to state a claim upon which relief can be granted."  A pleading states a claim for relief when, *inter alia*, it contains "a short and plain statement … showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it contains sufficient "factual

---

[1]     Defendants disclosed in their responsive pleadings that Dr. Perego formed CB Research as a Nevada corporation four days prior to executing the promissory note. [Doc. 9].

4

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires more than just the "sheer possibility" that a defendant acted unlawfully; it calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the elements of the claim. *Twombly*, 550 U.S. at 556. Although the Rule 8 pleading standard does not require "detailed factual allegations;" mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" do not suffice. *Id.* at 555.

In ruling on a Rule 12(b)(6) motion, a court may rely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A court must accept as true all factual allegations, although the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. In sum, if the factual allegations asserted in the complaint are wholly speculative or if it is apparent from the face of the complaint that there is an absolute bar to recovery, the claim should be dismissed. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

<u>DISCUSSION</u>

## I.   <u>Mandatary Liability</u>

In asserting claims against CB Medical, Dr. Templeton first argues that CB Medical was an undisclosed principal who authorized and directed its agents, Dr. Perego and CB Research, to enter an investment contract on its behalf. Louisiana Civil Code article 3020 provides that "[a] principal is bound to perform the contract that the mandatary, acting within the limits of his authority, makes with a third

person." Comment (b) clarifies that "[a] third person who contracts with the mandatary has a cause of action directly against the principal, whether disclosed or undisclosed."

Neither the Civil Code nor Louisiana courts have further defined the term "undisclosed principal," nor has the concept of an undisclosed mandatary been fully developed within the context of Louisiana's civilian tradition. Nonetheless, the Louisiana Supreme Court in *Woodlawn Park Ltd. Partnership v. Doster Const. Co., Inc.* endorsed the use of common law agency notions in commercial transactions, "recognizing that agency as a field of commercial law should be uniform throughout the country." 623 So.2d 645, 648 (La. 1993).

Turning to common law principles, then, the Restatement (Third) of Agency states that a principal is undisclosed only when "the third party has no notice that the agent is acting for a principal." § 1.04(2)(b) (2006); *see also Huntsman, LLC v. Blessey Marine Serv., Inc.*, CV 14-2237, 2016 WL 1031330, at *4 (E.D. La. Mar. 15, 2016) (citing Restatement (Third) of Agency § 1.04(2)(b)).  Thus, a claim for recovery pursuant to an undisclosed mandate theory is only viable in scenarios where the third person is unaware that the agent is acting on behalf of another.

Here, the parties do not dispute that Dr. Perego was acting as an agent for one or more of his companies, not on his own behalf. As such, the relevant inquiry is whether Dr. Templeton had notice that Dr. Perego and CB Research were acting on behalf of CB Medical.[2]  In this regard, Dr. Templeton's own allegations indicate that

---

[2]      The inquiry is the same regardless of whether Dr. Perego or CB Research is considered the agent under Plaintiff's theory.  "It is well-established that '[a] corporation is only a legal

CB Medical's identity was, in fact, disclosed at the time the promissory note was executed. In his Complaint, Dr. Templeton states that:

> On or about October 12, 2017, Dr. Perego contacted Dr. Templeton to seek and discuss a short-term working capital loan to cover operating costs of Dr. Perego's controlled entity—an existing company engaged, directly or indirectly, in sanctioned medical marijuana programs (or pursuit thereof). Dr. Perego referred to his controlled entity as CB Medical in discussions with Dr. Templeton about lending terms.

[Doc. 13 ¶ 7]. It follows that because Dr. Perego allegedly informed Dr. Templeton that the loan was intended to cover CB Medical's operating costs, Dr. Templeton was necessarily also apprised that the promissory note, which served as security for the Investment, was executed – at least in part – for the benefit of CB Medical.

The application of these facts to the law of mandate affords Dr. Templeton no basis to recover against CB Medical. If Dr. Perego, in order to obtain the Investment, made misrepresentations to Dr. Templeton regarding CB Medical's involvement in the investment transaction, such allegations describe a cause of action for fraud in the inducement – not undisclosed mandate. Accordingly, the Court concludes that CB Medical was not an undisclosed principal and dismisses Dr. Templeton's claim under mandate law with prejudice.

---

entity and strictly speaking it cannot act or have a mental state by itself. Nevertheless, the acts and mental states of its agents and employees will be imputed to the corporation where such natural persons acted on behalf of the corporation.' " *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 348 (5th Cir. 2013) (quoting 10 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Corporations § 4877 (2012 ed.)). If CB Research is considered the agent, it may, in turn, only act through its own agents who are natural persons. Here, Dr. Perego is the only natural person alleged to have acted on behalf of CB Research. Therefore, the acts of Dr. Perego in connection with the Investment are imputed to CB Research.

## II.   <u>Single Business Enterprise</u>

Next, Dr. Templeton claims that CB Medical should be held liable for CB Research's obligations under a single business enterprise ("SBE") theory, which "impos[es] liability where two or more business entities act as one." *Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016) (quoting *Brown v. ANA Ins. Grp.*, 994 So.2d 1265, 1272 (La. 2008)). More specifically, "when corporations integrate their resources in operations to achieve a common business purpose, each business may be held liable for wrongful acts done in pursuit of that purpose." *Brown*, 994 So.2d at 1267. Thus, the SBE doctrine is a "veil piercing theory…implemented to disregard the concept of corporate separateness when a juridical person is used to 'defeat public convenience, justify wrong, protect fraud, or defend crime.' " *Energy Coal*, 836 F.3d at 461 (quoting *Smith v. Cotton's Fleet Serv., Inc.*, 500 So.2d 759, 762 (La. 1987)). To determine whether the SBE theory is applicable in a given case, Louisiana courts consider the following eighteen non-exhaustive factors:

> corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control; common directors or officers; unified administrative control of corporations whose business functions are similar or supplementary; directors and officers of one corporation act independently in the interest of that corporation; corporation financing another corporation; inadequate capitalization ("thin incorporation"); corporation causing the incorporation of another affiliated corporation; corporation paying the salaries and other expenses or losses of another corporation; receiving no business other than that given to it by its affiliated corporations; corporation using the property of another corporation as its own; noncompliance with corporate formalities; common employees; services rendered by the employees of one corporation on behalf of another corporation; common offices; centralized accounting; undocumented transfers of funds between corporations; unclear allocation of profits and

losses between corporations; and excessive fragmentation of a single enterprise into separate corporations.

*Id.* at 460 (quoting *Green v. Champion Ins. Co.*, 577 So.2d 249, 257–58 (La. App. 1 Cir. 1991)). No one factor is dispositive, and the Court should consider the factors among the totality of the circumstances. *Aker Sols., Inc. v. Shamrock Energy Sols., L.L.C.*, 820 Fed.Appx. 243, 246–47 (5th Cir. 2020).

In his Complaint, Dr. Templeton alleges that a number of the *Green* factors indicate that CB Research and CB Medical operated as a single business entity: (i) common, majority ownership by Dr. Perego; (ii) Dr. Perego as common officer and/or director; (iii) Dr. Perego exerts unilateral, unified administrative control over both CB Medical and CB Research from the same location; (iv) Dr. Perego executed the promissory note for the exclusive benefit of CB Medical and to the detriment of CB Research with no ascertainable benefit to CB Research; (v) inadequate capitalization of CB Research; (vi) noncompliance with corporate formalities; (vii) common office at the same Alexandria address; (viii) centralized accounting; and (ix) undocumented transfers of funds between CB Research and CB Medical. [Doc. 13 ¶ 90]. Taking these facts as true, it is plausible that the SBE doctrine applies in a manner consistent with plaintiff's allegations.

Notwithstanding survival of the SBE claim at this stage, CB Medical also argues that any potential liability under the SBE theory should exclude Dr. Templeton's claim to an equity interest in CB Medical equal to the promised 90,000 shares of stock in CB Research. The Court agrees. Louisiana jurisprudence demonstrates that the purpose of an SBE judgment is to combine the relevant

9

juridical entities' assets for the purpose of satisfying the claims of creditors. *See, e.g.*, *Brown*, 994 So.2d at 1272 ("We find no authority for the proposition that Barbara's Presley's purported ownership interest in ANA was transformed into an ownership interest in USGA by virtue of the SBE designation. The nature and effect of the SBE judgment was simply to allow the Commissioner, as liquidator, to gather the assets of all of the SBE entities in order to use all of those assets to satisfy the claims of creditors.").

Dr. Templeton attempts to distinguish this matter from *Brown*, contending that he does not seek a transformation of his ownership interest in CB Research to CB Medical. [Doc. 25]. Rather, he claims that his interest in CB Research no longer exists because the corporation is in default. [*Id.*].  Thus, Dr. Templeton seeks an "an ownership interest in CB Medical, LLC directly as the intended issuer and maker of the note" and requests reformation of the promissory note to reflect as such. [*Id.*].

However, Louisiana's SBE doctrine does not include reformation of contracts such as would transfer equity interests within the combined companies. This Court declines to extend the SBE doctrine beyond what Louisiana law allows.  Accordingly, the Court finds that: (i) Dr. Templeton has stated a plausible claim under the SBE theory with respect to the potential liability of CB Medical for CB Research's monetary debts stemming Investment; but that (ii) Dr. Templeton has failed to state a cognizable claim against CB Medical for an equity interest in the company.

III.    **Civil Conspiracy to Commit Fraud**

Last, Dr. Templeton alleges that the Court should hold CB Medical liable based on a civil conspiracy theory. Specifically, he argues that Dr. Perego, CB Research, and CB Medical had an agreement to defraud him by inducing him to enter into the subject lending agreement.

Louisiana Civil Code article 2324(A) provides that one "who conspires with another person to commit an intentional or willful act is answerable, *in solido*, with that person, for the damage caused by such act." To prove civil conspiracy, the plaintiff must "establish a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 526 (5th Cir. 2016) (quoting *Thomas v. N. 40 Land Dev., Inc.*, 2004-0610, p. 22 (La. App. 4 Cir. 1/26/05); 894 So.2d 1160, 1174).

It is well-settled that a natural person cannot conspire with himself. *See Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952) (noting that a "corporation cannot conspire with itself any more than a private individual can"); *Alexander v. Texas Co.*, 149 F.Supp. 37 (W.D. La. 1957) ("If defendant was representing plaintiff as his agent, then defendant's actions were his actions, and he has no valid complaint…, for, as stated in Nelson Radio & Supply Company v. Motorola, Inc., supra, a person 'cannot conspire' with himself."); *Crutcher-Tufts Res., Inc. v. Tufts*, 2009-1572, p. 7 (La. App. 4 Cir. 4/28/10); 38 So.3d 987, 991 ("The only person alleged to have committed any acts in furtherance of this supposed conspiracy is [the defendant]. It is well established that a person cannot conspire with himself.").

11

The Court of Appeal for the Louisiana Fifth Circuit encountered a civil conspiracy claim arising from facts similar to those presented in this matter. In *Khoobehi Properties, LLC v. Baronne Development No. 2, L.L.C.*, the plaintiff brought a civil conspiracy claim against an individual named Mohan Kailas ("Mr. Kailas"), as well as three business entities: Baronne Development No. 2, L.L.C. ("Baronne Development"), Kailas Family Limited Partnership ("KFLP"), and Kailas Properties, L.L.C. ("Kailas Properties"). 16-506, p. 13 (La. App. 5 Cir. 3/29/17); 216 So.3d 287, 298–99.  Mr. Kailas was the only natural person alleged to have acted on behalf of Baronne Development, KFLP, and Kailas Properties. *Id.* Based on the fact that limited liability companies and partnerships can only act through their members or managers, the court explained that the plaintiff's petition "essentially alleges that Mr. Kailas, acting on behalf of Baronne Development, conspired with Mr. Kailas, acting on behalf of himself and/or KFLP and/or Kailas Properties, to fraudulently induce [the plaintiff]…" *Id.*  Finding that Mr. Kailas could not have conspired with himself to commit fraud, the court held that the allegations were insufficient to maintain a cause of action for civil conspiracy. *Id.*

Analogous to Mr. Kailas in *Khoobehi Properties*, Dr. Perego is the sole natural person alleged to have acted on behalf of CB Research and CB Medical. Because Dr. Perego could not have conspired with himself to defraud Dr. Templeton, the Court finds that the Complaint fails to allege facts supporting a meeting of minds in agreement in commit fraud. Accordingly, the Court dismisses Dr. Templeton's civil conspiracy claim with prejudice.

<u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART CB Medical's Motions.

IT IS HEREBY ORDERED that the Court dismisses WITH PREJUDICE Dr. Templeton's agency law and civil conspiracy claims against CB Medical.

IT IS FURTHER ORDERED that in all other respects, CB Medical's Motions are DENIED.

THUS DONE AND SIGNED in Chambers on this 24th day of November, 2020.


_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE